UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LARRY COLSTON,

     Petitioner,

                              Case No.  3:12cv298/MCR/CJK

MICHAEL D. CREWS,

     Respondent.

_____/

REPORT AND RECOMMENDATION

     Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 14).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 27).  The court invited petitioner to reply (*see* doc. 28), but he has not done so.  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the amended petition should be denied.

## BACKGROUND AND RELEVANT PROCEDURAL HISTORY

By amended information filed in Escambia County, Florida Circuit Court Case No. 06-1172, petitioner was charged with one count of unemployment compensation fraud (Count 1) and one count of failure to appear on a felony charge (Count 2). (Doc. 27, Ex. A).[1]  On November 5, 2009, petitioner executed a written plea form, titled "Sentence Recommendation," in which he agreed to plead nolo contendere to both counts as charged, with no agreement at to his sentence (otherwise known as an "open" or "straight-up" plea to the court).  (*Id.*, pp. 14-21, 26-29).  Petitioner's maximum possible sentence was 10 years in prison.  The court conducted a plea colloquy and accepted petitioner's plea.  (*Id.*, pp. 14-21).  By judgment rendered January 13, 2010, petitioner was adjudicated guilty and sentenced to a term of five years in prison on Count 1, and a consecutive term of three years in prison on Count 2.  (*Id.*, pp. 30-44).  The Florida First District Court of Appeal ("First DCA") per curiam affirmed the judgment of conviction without a written opinion, on August 31, 2010.  *Colston v. State*, 43 So. 3d 693 (Fla. 1st DCA 2010) (Table) (copy at Ex. D).  The mandate issued September 16, 2010.  (Ex. E).

On November 15, 2010, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. F, pp. 1-19).  The state circuit court struck the motion as facially insufficient on March 21, 2011, with leave to file a facially sufficient motion "within a reasonable time period."  (*Id.*, pp. 31-32).  On June 14, 2011, petitioner filed an amended motion.  (*Id.*, pp. 33-40).  The circuit court summarily denied the motion in an order rendered on August 5, 2011.  (*Id.*, pp. 45-

---

[1]All references to exhibits are to those provided at Doc. 27, unless otherwise noted.  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

49).   The First DCA per curiam affirmed on January 9, 2012, without a written opinion.  *Colston v. State*, 77 So. 3d 1258 (Fla. 1st DCA 2012) (Table) (copy at Ex. I).  The mandate issued February 6, 2012.  (Ex. J).

Petitioner filed his federal habeas petition in this court on June 12, 2012 (doc. 1, p. 16), which he subsequently amended (doc. 14).  The amended petition raises two grounds for relief.  (Doc. 14).  Respondent filed an answer asserting that petitioner is not entitled to relief on Ground One, because the state court's adjudication of that claim was not contrary to, or an unreasonable application of, clearly established federal law.   (Doc. 27, pp. 7-17).   Respondent asserts that Ground Two is unexhausted and procedurally defaulted.  (*Id.*, pp. 17-23).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably

extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the

petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

Ground One          "The state courts decision [sic] resulted in an unreasonable determination of facts in light of the evidnece [sic] presetned [sic] in the state court proceeding." (Doc. 14, p. 8).[3]

Petitioner claims his trial counsel was ineffective for advising him to reject a State's plea offer of 25.5 months in prison and to instead enter an open or straight-up plea to the court based on counsel's belief petitioner would receive no more than 18 months in prison if he pled straight-up. (Doc. 14, pp. 8-13). In support of this claim, petitioner alleges he was originally charged on March 9, 2006, with one count of unemployment compensation fraud. Nearly three years later, on February 2, 2009, the State offered to recommend a sentence of 25.5 months in prison in exchange for petitioner pleading no contest to the fraud charge. Petitioner alleges the plea offer of 25.5 months matched the lowest permissible sentence he could receive under the

---

[3]Page numbers of the petition are referenced according to the court's electronic docketing system.

Criminal Punishment Code ("CPC") given the severity of the offense and petitioner's prior criminal history.  Petitioner alleges the offer did not include a deadline for acceptance.  Petitioner asserts that "[b]efore [he] could enter a plea," he failed to appear for a court date on July 13, 2009, resulting in the State's amending the information on October 13, 2009, to add a felony charge of failure to appear. Petitioner asserts he asked defense counsel whether the 25.5-month plea offer would apply to both counts.  Counsel allegedly advised petitioner that it would, but that petitioner should reject the offer because he would receive a sentence of not more than 18 months on the fraud count if he pled straight-up to the court.  (Doc. 14, pp. 10, 12).  Petitioner contends counsel's advice was deficient, because (1) counsel failed to advise him that the 25.5 months reflected the lowest permissible sentence he could receive on the fraud charge unless he qualified for a downward departure, (2) counsel erroneously assured him he would receive no more than 18 months if he pled straight up on the fraud charge, and (3) counsel failed to advise him that "his prior criminal history would be considered, or used to increase the possible sentence above the lowest permissible sentence of 25.5 months.  (Doc. 14, pp. 9-10).  Petitioner alleges that had he known 25.5 months was the lowest permissible sentence he could receive on the fraud charge without qualifying for a downward departure, he would have rejected counsel's advice and accepted the State's offer of 25.5 months on the fraud count, because he "could never qualify for" a downward departure (doc. 14, p. 12). Petitioner contends counsel's deficient advice, coupled with counsel's assurance that he would receive no more than 18 months in prison if he pled straight up, caused petitioner to enter an improvident plea resulting in a total term of imprisonment of 8 years.

Petitioner states he raised this claim in his amended Rule 3.850 motion and on appeal of the circuit court's order denying relief.  (Doc. 14, pp. 8-13).  Petitioner contends the state court determined that the plea colloquy refuted his claim; however, this determination was unreasonable, because the trial court never asked him if counsel made any promises to him regarding the outcome of his sentence, and the court affirmatively advised him he could be sentenced "anywhere from the maximum to anything below that."  (Doc. 14, p. 12).  Petitioner contends it was obvious that he entered his plea based upon counsel's erroneous advice, because it would defy logic for him to reject an offer of the lowest permissible sentence, unless he was promised an even lower sentence.  (*Id.*).

Respondent argues petitioner is not entitled to federal habeas relief, because the state courts correctly identified and reasonably applied the clearly established federal standard in rejecting this claim.  (Doc. 27, pp. 7-17).

A.    Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (*citing Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), *and McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."  *Lafler*, 132 S. Ct. at 1387.  The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations.  *Lafler*, 132 S. Ct. at 1384 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was

ineffective for advising him to reject a plea offer); *Frye*, 132 S. Ct. at 1404, 1409-10 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (*quoting Strickland*, 466 U.S. at 688). The focus of inquiry under the performance prong of the *Strickland* standard is whether counsel's assistance was "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The Supreme Court has expressly warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what

a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann*, 397 U.S. at 769-70, 90 S. Ct. at 1448.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56-57 (*quoting McMann*, 397 U.S. at 771).   Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991).  Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.*  This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.*  Therefore, a defendant's failure to "correctly assess every relevant

factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

*Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

B.     Federal Review of State Court Decision

Petitioner raised this claim in his amended Rule 3.850 motion.  (Ex. F, pp. 35-39).  The state circuit court's written order cited the *Strickland* standard (*id.* pp. 46-47), and denied relief on the merits as follows:

> The Court finds that in the instant case, the plea colloquy conclusively refutes Defendant's claims.  The Court was very specific with Defendant about the fact that there were no promises regarding what Defendant's sentence would be.  The Court made sure Defendant understood that the Court did not even know what sentence Defendant would receive.  The Court asked Defendant whether his understanding of the plea was that "you are pleading guilty, but there is no certainty on what the sentence is going to be, other than you can't be sentenced more than the maximum, and the maximum is ten years in prison."  Defendant agreed that such was his understanding of the plea that he was about to enter.  Additionally, the Court made clear to Defendant that the lowest permissible sentence on the scoresheet was 39.5 months and the maximum permissible sentence was 10 years in state prison.  Defendant indicated that he understood all of these aspects of his plea.
>
> The Court, therefore, assured that Defendant understood the consequences of entering a general plea to the Court and Defendant's sentencing exposure, in no uncertain terms.   Defendant cannot, therefore, have reasonably relied on any representation of his attorney that he would receive a sentence of only 18 months in prison.  Defendant told the Court that he understood that his sentencing range was from 39.5 months up to 10 years.  He cannot now indicate that he did not, after all, understand his sentencing exposure.   His representations at the plea colloquy carry consequences.  Consequently, the Court does not find that Defendant is entitled to relief.

(Ex. F, p. 47-48).  Petitioner appealed, raising this issue in his initial brief. (Ex. G).  The First DCA affirmed without opinion.  (Ex. I).

The transcript of petitioner's plea colloquy is part of the state court record. (Ex. A, pp. 15-20).  The trial court questioned petitioner about the circumstances of his plea and his understanding of its consequences, including his sentence exposure:

> MR. FRANCE [defense counsel]:  Judge, this is going to be a straight-up plea.
>
> THE COURT:  Okay.  The scoresheet on Mr. Colston comes to 62 points, which puts him in the lowest permissible prison sentence of 25.5 months up to five years in state prison for a third-degree felony.  Does the Defense agree with the accuracy of the scoresheet?
>
> MR. FRANCE:  Judge, I believe I gave you one that did not have the failure to appear on it.  That's what happened.  It's 39 months with the failure --
>
> THE COURT:  Here.
>
> MR. FRANCE:  That's the amended scoresheet.
>
> THE COURT:  Okay.
>
> MR. FRANCE:  And we agree with that, Judge.
>
> THE COURT:  The scoresheet – the amended scoresheet is 80.7 months. The lowest permissible prison sentence is 39.5 months with a maximum of ten years.  Why is it ten years?
>
> MR. FRANCE:  I believe it's –
>
> THE COURT:  Third-degree felony.
>
> MS. KEENAN [prosecutor]:  And a failure to appear, third degree.
>
> THE COURT:  Oh, there's two counts?  I don't see it on the plea agreement.

MR. FRANCE:  There's the failure to appear and the original.

MS. KEENAN:  I don't know how old that agreement is, Your Honor.

MR. FRANCE:  Okay.

MS. KEENAN:  But I amended the information, so there needs to be two counts on there.

MR. FRANCE:  The plea agreement doesn't – okay.  We'll add the failure to appear on that.

. . .

MR. FRANCE:  All right.  I think we've got it fixed.

THE COURT:  Okay.  The scoresheet is for two counts, unemployment compensation fraud and felony failing to appear, two third-degree felonies.  So its lowest permissible prison sentence is 39.5 months with a maximum of ten years' state prison.  Does the Defense agree with the accuracy of the scoresheet?

MR. FRANCE:  We do, Judge.

. . . .

THE COURT:  Okay.  Under the agreement, Mr. Colston, you're entering a plea to both counts, nolo contendere.  And it's going to be a straight-up plea, meaning that you're admitting to the two charges, but there is no agreement on the – what the sentence is going to be.  You could be sentenced anywhere from – under the guidelines, from 39.5 months to ten years in prison.

THE DEFENDANT:  Yes, sir.

THE COURT:  I don't know what it's going to be.  I'm making you no promises.  We will get a PSI.  We'll make it returnable back, and, you know, like I say, I don't promise you anything because I don't know what the sentence is going to be.  Is that your under – is that the State's understanding of the plea?

MS. KEENAN:  Yes, sir.

THE COURT:  What about the Defense?

MR. FRANCE:  Yes, sir, it is.

THE COURT:  What about you, Mr. Colston?

THE DEFENDANT:  Yes, sir.

THE COURT:  Is that your understanding?

THE DEFENDANT:  Yes, sir.

THE COURT:  That you're pleading guilty, but there is no certainty on what the sentence is going to be, other than you can't be sentenced more than the maximum, and the maximum is ten years in prison.

THE DEFENDANT:  Yes, sir.

THE COURT:  You could be sentenced anywhere from the maximum down to anything below that.

THE DEFENDANT:  Yes, sir.

THE COURT:  That's your understanding?

THE DEFENDANT:  Yes, sir.

THE COURT:  That's what you want to do?

THE DEFENDANT:  Yes, sir.

(Ex. A, pp. 17-19).  The transcript supports the state court's factual finding that prior to entering his plea, petitioner confirmed his understanding that his sentence would be between 39.5 months and 10 years in prison.  This conclusively refutes petitioner's contention that he based his plea on counsel's promise he would receive no more than 18 months in prison.

Additionally, petitioner attested on his written plea form:  "I am satisfied with [my] attorney's advice and services and my attorney has not compelled or induced me to enter into this Sentence Recommendation by any force, duress, threats, pressure <u>or promises</u>."  (Ex. A, p. 29) (emphasis added).

In addition, petitioner, at his sentencing hearing on January 13, 2010, expressed no surprise when defense counsel requested the court sentence him to the minimum guidelines sentence, which petitioner knew was 39.5 months in prison:

> THE COURT:  . . . What does the State want to say regarding the sentence?
>
> MS. KEENAN:  Your Honor, the State would ask that the defendant receive the maximum penalty.  He's got a long prior record, multiple thefts and burglaries as well as violent charges.  We would ask that he get ten years state prison with restitution reduced to a lien.
>
> THE COURT:  What does the Defense want to say?
>
> MR. FRANCE:  Judge, first of all, we presented a copy of the PSI  to Mr. Colston.  Mr. Colston, you've read the PSI.
>
> THE DEFENDANT:  Yes, I did.
>
> MR. FRANCE:  There's no factual errors as far as you know?

THE DEFENDANT:  No.

MR. FRANCE:  Judge, I just would note that there is a fairly extensive record.  I ask the Court to sentence him to the minimum guidelines in the case.

Would you like to address the Court also, Sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay, your comments, sir?  I did receive a letter from you that I did read but any comments you want to make, sure, go right ahead.

THE DEFENDANT:  Yes, sir. Sir, I would like to let you know that that false statement, that was never intentionally to be did [sic] because during the time there was a hurricane and I called a number and I never made a statement, you know.  I punched a number.  I may have hit the wrong number, you know.  But it was nothing intentional.

THE COURT:  Anything else?

THE DEFENDANT:  No, sir.

(Ex. A, pp. 31-32).  The fact that petitioner gave no indication to the trial court that he expected a sentence of less than 39.5 months further supports the state court's finding that petitioner understood when he entered his plea that his sentence would be 39.5 months to 10 years in prison.  Petitioner has not shown he entered his straight-up plea in reliance on a promise that he would receive a sentence of only 18 months in prison.

Moreover, petitioner has not established there is a reasonable probability the outcome of the plea process would have been different (*i.e.*, he would have accepted the State's offer of 25.5 months on the fraud charge) had counsel not erroneously

assured him he would be sentenced to 18 months if he pled straight-up.  The State made its 25.5-month offer on February 2, 2009.  Petitioner had three in-court opportunities to act on counsel's alleged advice to enter a straight-up plea to the fraud charge, yet petitioner did not enter a plea and instead allowed the case to proceed to trial.  On April 30, 2009, petitioner attended a court hearing which concluded with the case being passed to May 11, 2009, for jury selection.  (Ex. A, Docket Sheet). Petitioner was present on the May 11 court date, and the case was passed to May 18, 2009, for jury selection.  (*Id.*).  Petitioner was present on the May 18 court date, and the case was reset for jury trial on July 13, 2009, with a "docket day" or status conference scheduled for July 2 at the request of the defense.  (*Id.*).  There is no indication petitioner appeared on July 2, and the case was left on the docket for jury selection on July 13, 2009.  (*Id.*).  Petitioner failed to appear for his trial on July 13, 2009, and the State amended the information with the new charge on October 13, 2009.

If petitioner's decision to reject the State's offer and to plead straight-up was truly motivated by counsel's alleged promise of an 18-month sentence on the fraud charge, petitioner would have entered a straight-up plea at any one of the scheduled court dates following the February plea offer.  Instead, petitioner continued the proceedings and, after failing to appear for trial, incurred an additional charge.  There is no evidence that the State's 25.5-month offer was still available after the new charge was added.  *See Lafler*, 132 S. Ct. at 1385 (holding that when the alleged ineffective advice led to rejection of a plea offer, the petitioner must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of

intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."); *see also Frye*, 132 S. Ct. at 1409 (holding that petitioners seeking to demonstrate prejudice must establish a reasonable probability that (1) "they would have accepted the earlier plea offer had they been afforded effective assistance of counsel," and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."). After the failure to appear charge was added and petitioner decided to enter his straight-up plea, he knew that the lowest permissible sentence the court could impose under the guidelines was 39.5 months in prison and that his sentence could be as high as 10 years in prison. Petitioner has not shown counsel's performance during the plea process caused him to enter an unknowing or involuntary plea.

The state court's rejection of petitioner's claim was based on a reasonable determination of the facts and was a reasonable application of *Strickland*. Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two      <u>"Trial Counsel rendered ineffective assistance by failing to understand that a plea offer based on the lowest permissible sentence should not be rejected (except in certain circumstances, none of which apply to petitioner), and to ensure that petitioner understood his plea offer of 25.5 months was based upon the lowest permissible sentence (which must be imposed—absent a downward departure based upon mitigating factors) prior to him rejecting the offer and entering an open plea, rendering his plea involuntary."</u> (Doc. 14, p. 14).

Petitioner alleges the same facts in support of Ground Two as asserted in Ground One. (Doc. 14, pp. 14-18). Petitioner attempts to distinguish Ground Two

by arguing that it is based solely upon defense counsel's performance <u>prior to</u> petitioner's failing to appear and the State's adding a charge; whereas, Ground One is based upon counsel's performance <u>after</u> those events.  Petitioner contends counsel was ineffective for advising him to reject the State's 25.5-month offer because he would "get a better sentence" if he entered an open plea to the court.  Petitioner alleges counsel failed to advise him that the State's offer was the lowest possible sentence absent a departure sentence, and that by rejecting the offer petitioner exposed himself to a harsher sentence.  Petitioner argues counsel's deficiency caused him not only to reject a favorable plea offer, but, ultimately, to receive a 60-month sentence on the fraud charge, which was 34.5 months more than he would have received had he accepted the State's 25.5-month offer prior to his failure to appear on July 13, 2009.

Petitioner states he did not raise this claim in the Rule 3.850 proceeding.  (Doc. 14, p. 18).  Relying upon *Martinez v. Ryan*, 132 S. Ct. 1039 (2011), petitioner alleges his procedural default was caused by the state court's failure to appoint postconviction counsel during the Rule 3.850 proceeding.  (*Id.*, pp. 18-19).

Respondent asserts this claim is unexhausted and procedurally defaulted, because petitioner never presented the issue to any state court.  (Doc. 27, pp. 17-20).  Respondent contends petitioner is not entitled to review of Ground Two under *Martinez*, because his underlying ineffective assistance claim is not substantial.  (*Id.*, pp. 21-23).  Respondent argues petitioner's assertion that he rejected the State's 25.5-month offer based upon counsel's advice to reject it and plead straight up for a sentence of not more than 18 months, is belied by the record, which demonstrates that petitioner appeared at three court hearings after the State extended the offer, yet he

did not enter a plea and instead proceeded to a jury trial, which was set for July 13, 2009, the date he failed to appear.  (*Id.*).

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[4] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not fully exhausted in state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)   the applicant has exhausted the remedies available in the courts of the State; or

        (B) (i)  there is an absence of available State corrective process; or

            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

The state court record demonstrates that in his Rule 3.850 motion, petitioner alleged all of the facts underlying Ground Two and argued that those facts established defense counsel provided ineffective assistance, in violation of the Fifth, Sixth, and

Fourteenth Amendments and Supreme Court law, by causing him to improvidently reject the State's initial 25.5-month plea offer on the fraud charge. (Ex. H, pp. 3-7). In petitioner's initial brief on appeal of the circuit court's order, he argued the lower court failed to address his "sub claims," one of which was that counsel was ineffective for failing to advise him that the State's 25.5-month offer was the lowest permissible sentence he could receive unless he qualified for a downward departure. (Ex. G, p. 6). The First DCA summarily affirmed the lower court's decision without a written opinion. (Ex. I).

Petitioner satisfied the exhaustion requirement. The substance of petitioner's Ground Two is that between February 2, 2009 and July 13, 2009, defense counsel performed in a constitutionally deficient manner by advising petitioner to reject the State's 25.5-month offer and plead straight up for an 18-month sentence, without advising him that 25.5 months was the lowest sentence he could receive absent a downward departure. Petitioner presented that argument, fully and fairly, to the state circuit court and to the First DCA in his Rule 3.850 proceeding and appeal. Based upon the circuit court's ruling that applied controlling federal legal principles to the facts, and completely rejected the constitutional claim, the circuit court plainly understood the claim. The state appellate court determined the lower court properly rejected the claim. The record does not support a finding of procedural default. *See Boerckel*, 526 U.S. at 845 ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts."); *Picard*, 404 U.S. at 275 ("[O]nce the

federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."). The court rejects the contention that Ground Two was not exhausted.[5]

Additionally, the court rejects petitioner's suggestion that the state courts did not adjudicate the merits of Ground Two. Section § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits." *See Richter*, 131 S. Ct. at 784. When a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits in the absence of any indication or state-law procedural principles to the contrary. *Id*. at 784–85. The presumption may be overcome when there is a reason to think some other explanation for the state

---

[5]Even if the court accepted the parties' contention that petitioner failed to exhaust Ground Two, that would not change the ultimate outcome of this case, as federal habeas relief would still be denied. Petitioner alleges his procedural default was caused by the state court's failure to appoint counsel in the postconviction proceeding, relying on *Martinez*. In *Martinez*, the Supreme Court held "where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320.

Here, it is clear from the state court record that petitioner was not represented by counsel in the Rule 3.850 proceeding, which is the "initial-collateral review proceeding" for purposes of *Martinez*. However, petitioner does not allege, nor does the record show, that he expressed to the state court a desire to be represented by counsel in the Rule 3.850 proceeding. Florida law allows for the appointment of counsel for a petitioner seeking postconviction relief under Rule 3.850. *See* Fla. R. Crim. P. 3.850(f)(7) ("The court may appoint counsel to represent the defendant under this rule. The factors to be considered by the court in making this determination include: the adversary nature of the proceeding, the complexity of the proceeding, the complexity of the claims presented, the defendant's apparent level of intelligence and education, the need for an evidentiary hearing, and the need for substantial legal research."). Petitioner could have requested the appointment of counsel at the time he filed his Rule 3.850 motion or while it was pending, but he did not. Thus, he is not entitled to the equitable exception to the procedural bar created by *Martinez*.

court's decision is more likely. *Id.* at 785. The same rule applies when the state court addresses some, but not all of the federal claims raised by a defendant. When a federal claim has been presented to the state court, and the state court opinion addresses some but not all of defendant's federal claims, a rebuttable presumption arises on federal habeas review that the state court adjudicated all of the federal claims on the merits. *See Johnson v. Williams*, — U.S. —, 133 S. Ct. 1088, 1096, 185 L. Ed. 2d 105 (2013).

Here, there is no basis to conclude that it is more likely the state court's decision was anything but a merits adjudication. The First DCA's decision constituted an adjudication on the merits of Ground Two, and is due deference under § 2254(d).

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Richter*, 131 S. Ct. at 786. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id.* In other words, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id.*

Petitioner fails to meet that standard. For the reasons discussed *supra*, petitioner has not shown there is a reasonable probability the plea process would have resulted differently (*i.e.*, he would have resolved his case earlier by accepting the

State's plea offer on the fraud charge and by entering a no contest plea for a negotiated sentence of 25.5 months imprisonment) had counsel advised him, upon receipt of the State's offer, that 25.5 months was the lowest permissible sentence under the guidelines.  Petitioner's own actions between February 2, 2009 (the date of the State's offer) and July 13, 2009 (the date petitioner failed to appear for trial on the fraud charge) demonstrate that petitioner was unwilling to enter a plea on the fraud charge during the time that was the only charge.  Petitioner's unwillingness is evidenced by the fact that petitioner insisted on going to trial on the fraud charge <u>even when he allegedly believed he could get an **18-month** sentence if he pled no contest</u> (pursuant to counsel's alleged advice to reject the offer and enter an open plea). Petitioner's actions demonstrate that this apple has already been bitten.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of the *Strickland* standard.  Petitioner is not entitled to federal habeas relief on Ground Two.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning

of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 14), challenging the judgment of conviction and sentence in *State of Florida v. Larry Colston*, Escambia County, Florida Circuit Court Case Number 06-1172, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 30th day of September, 2014.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).